IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA

v.                                          CRIMINAL NO. 2:16-00218

DON LAMONT WILKERSON

MEMORANDUM OPINION AND ORDER

    Before the court is defendant's motion for a new trial.  ECF

No. 202.  For the reasons that follow, the motion is **DENIED**.

## I.    BACKGROUND

    Did Don Lamont Wilkerson sell methamphetamine or marijuana?

That was the question presented to the jury.  The government

charged Wilkerson with distributing methamphetamine on three

occasions in September 2016:

1) Count One charged that, on or about September 9,
   2016 the defendant knowingly and intentionally
   distributed 50 grams or more of methamphetamine, in
   violation of 21 U.S.C. § 841(a)(1).

2) Count Two charged that, on or about September 13,
   2016, the defendant knowingly and intentionally
   distributed 5 grams or more of methamphetamine, in
   violation of 21 U.S.C. § 841(a)(1).

3) Count Three charged that, on or about September 26,
   2016, the defendant knowingly and intentionally

distributed 50 grams or more of methamphetamine, in
violation of 21 U.S.C. § 841(a)(1).

ECF No. 35.  After a three-day trial, the jury found the
defendant guilty on all three counts.

At trial, the government presented evidence of three sales
of methamphetamine by Wilkerson to a confidential informant
("CI") occurring on September 9 (2 ounces), 13 (1 ounce), and 26
(2 ounces), 2016.  The telephone calls setting up each
transaction were audio recorded, and each purchase was recorded
using audio and video.  These recordings were played for the
jury after their authentication.

On behalf of the government, two law enforcement officers,
the CI, and a chemist testified.  Both law enforcement officers,
Corporal Justin Hackney and Detective Brian Middleton, each of
the Metropolitan Drug Enforcement Network Team ("MDENT"), were
involved in organizing and surveilling the three sales of
methamphetamine by Wilkerson to the CI.  The CI testified about
his three purchases of methamphetamine from Wilkerson.  Forensic
chemist, Eleina Sokolin, with the Forensic Drug Team of the
Department of Homeland Security Customs and Border Protection
Civilian Laboratories, testified about her analysis of each
quantity of methamphetamine, including their weight and purity.

After the government's case-in-chief, Wilkerson took the
stand and testified that he had sold marijuana, not

methamphetamine, to the CI.  Specifically, Wilkerson testified

that he sold the CI two-quarter pounds of marijuana on both

September 9 and 26, 2016, and one-quarter pound of marijuana on

September 13.

After the jury's guilty verdict on all three counts, the

court denied Wilkerson's motion for judgment of acquittal.

After three continuances were granted by this court,

counsel for Wilkerson filed the instant motion for a new trial

pursuant to Rule 33(a) of the Federal Rules of Criminal

Procedure.  ECF No. 202.  The government opposed the motion,

(ECF No. 203), and the court reviews the defendant's arguments

in turn.

## II.  APPLICABLE LAW

Rule 33 of the Federal Rules of Criminal Procedure allows a

trial court to grant a new trial to a defendant upon the

defendant's motion "if the interest of justice so requires."

Fed. R. Crim. P. 33(a).  When a Rule 33 motion attacks the

weight of the evidence, a trial court's authority to grant a new

trial is "much broader" than when a trial court decides a motion

under Rule 29 of the Federal Rules of Criminal Procedure.

United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir. 1985).

Included within this broader discretion is the ability to weigh

the credibility of witnesses.  See id.  However, despite a trial

court's broad discretion when deciding a Rule 33 motion that

attacks the weight of the evidence, a trial court should use
such discretion "sparingly, and a new trial should be granted
only when the evidence weighs heavily against the verdict."  Id.
at 1486; United States v. Singh, 518 F.3d 236 (4th Cir. 2008)
(reversing a district court that granted a new trial under Rule
33 for abuse of discretion where the evidence at trial did not
weigh heavily against the verdict).

### III. ANALYSIS

#### A. The Weight of the Evidence Supports Conviction

Wilkerson alleges that the evidence presented by the
government was not sufficient for a jury to find him guilty
beyond a reasonable doubt.  First, Corporal Hackney was unable
to recall aspects of his involvement in the controlled buys,
including his search of the CI and his vehicle, whether he
recorded the license and registration of the CI's vehicle, and
when and where the CI signed an Informant Agreement.  Moreover,
counsel for the defendant asserts that the testimony of the CI
should not be "credited" based upon his biases and
untruthfulness.

The defendant asks the court to play the role of fact-
finder, but that is not its role.  Unless exceptional
circumstances arise, a trial court "must defer to the jury's
resolution of the weight of the evidence and the credibility of
the witnesses."  United States v. LeRoy, 687 F.2d 610, 616 (2d
Cir. 1982), cert. denied, 459 U.S. 1174 (1983); United States v.

4

Gomez-Jimenez, 750 F.3d 370, 379 (4th Cir. 2014) ("It is the jury's duty to weigh contradictory evidence and inferences, pass on the credibility of witnesses, and draw the ultimate factual conclusions.").  Instead, the court must step in and "grant a new trial sparingly," United States v. Wilson, 118 F.3d 228, 237 (4th Cir. 1997), only "when the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." Arrington, 757 F.2d at 1485.

As previously stated, the government presented testimony from the CI who purchased methamphetamine from Wilkerson on all three occasions, two law enforcement officers who were responsible with overseeing the purchases of methamphetamine, and the chemist who analyzed each package of contraband for purity and weight.  The fact that Wilkerson took the stand to contradict the government's case-in-chief does not justify overturning the jury's verdict.  Instead, the government provided the jury with sufficient evidence of each of the three methamphetamine sales to support their verdict.

**B. The Government Proved Pure Methamphetamine**

Wilkerson alleges that the government failed to prove that he distributed the requisite quantities of methamphetamine charged in each count of the Superseding Indictment because the sample size tested for purity was too small.  Counts One and Three required the government to demonstrate that the defendant distributed 50 grams or more of methamphetamine, while Count Two

required the distribution of at least 5 grams.  See ECF No. 35.
To meet these threshold quantities, the weight of the
methamphetamine seized must be multiplied by its purity to yield
the pure amount of methamphetamine (i.e. 100 grams of
methamphetamine x 90% purity = 90.0 grams of pure
methamphetamine).

All three methamphetamine quantities were tested for weight
and purity by Eleina Sokolin.  Sokolin was qualified by the
court as an expert witness without objection by defense counsel.
See Mar. 28, 2018, Tr. 113:20-114:1.  Sokolin determined that
each substance was methamphetamine in weight and purity as
follows:

| Count | Weight Received (+/- .1 grams) | Lowest Weight (-.1 grams) | Purity (+/- 2.1%) | Lowest Purity (-2.1%) | Lowest Total (grams) |
|-------|-------------------------------|---------------------------|-------------------|-----------------------|----------------------|
| One   | 56.50 | 56.49 | 96.7% | 94.6% | 53.4 |
| Two   | 27.10 | 27.09 | 95.2% | 93.1% | 25.2 |
| Three | 54.59 | 54.58 | 98.0% | 95.9% | 52.3 |

Id. at 121:25-125:17.  Sokolin testified that she used
approximately 0.3 grams of each quantity of methamphetamine to
analyze the purity of each sample.  Id. at 127:9-21.

The defendant alleges that extrapolating the purity of the
entire quantity by testing 0.3 grams of that sample is
insufficient because other parts of the sample could have a
lower purity, decreasing the amount of pure methamphetamine.
Without considering that the court granted the defendant's

motion to retest the drug evidence by another laboratory, (ECF No. 129),[1] Sokolin stated that her testing procedure followed the methodology established by the DEA to produce reliable results. Id. at 130:2-12. Counsel for defendant did not produce any evidence that the procedure used by Sokolin was scientifically deficient. Therefore, the court finds that a reasonable jury could have found the defendant guilty of distributing the necessary quantities of methamphetamine as charged in each count.

## C. 21 U.S.C. § 841 Is Constitutional

Defendant claims that the mandatory sentencing enhancements established by 21 U.S.C. § 841 for 5 and 50 grams of pure methamphetamine are fundamentally flawed because they result in disproportionate punishment when compared with a defendant who distributes a mixture of methamphetamine.

Defendant was convicted on three counts. In Counts One and Three, Wilkerson was found guilty of 21 U.S.C. § 841(a)(1)(B)(viii), wherein 50 grams of pure methamphetamine is charged the same as "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine." Equivalently, Count Two which charges a violation of § 841(b)(1)(A)(viii), punishes a defendant for distributing at

---

[1] Neither party offered evidence at trial regarding this retest.

least 5 grams of pure methamphetamine the same as at least 50
grams of a methamphetamine mixture.  Defense counsel alleges
this 10:1 disparity between pure methamphetamine and a mixture
of methamphetamine is fundamentally flawed because it is
incongruent with a defendant's culpability.  ECF No. 202 at pp.
10-11.

Counsel for defendant cites two district court rulings that
did not follow 841's sentencing guidelines because "the
connection between methamphetamine purity and criminal role is
divorced from reality."  Id. at p.12 (quoting United States v.
Hartle, No. 4:16-cv-00233-BLW, 2017 WL 2608221 at *8 (D. Idaho
June 15, 2017)).  In United States v. Nawanna, the second case
cited by defense counsel, the trial judge refused to sentence
the defendant at a 10:1 ratio "based on [his] policy
disagreement with the purity-based methamphetamine Guidelines."
No. CR 17-4019-MWB, 2018 WL 2021350, at *10 (N.D. Iowa May 1,
2018).  Neither Hartle or Nawanna suggest that their policy
disagreements with § 841's sentencing formula equates to its
unconstitutionality.

Moreover, while the Fourth Circuit has not explicitly
stated that the 10:1 disparity is constitutional, it has
affirmed the constitutionality of § 841 in United States v.
Mason, 82 F. App'x 310, 313 (4th Cir. 2003); see also United
States v. Thompson, 69 F. App'x 655, 656 (4th Cir. 2003) (per

curiam) ("We have repeatedly, however, found that § 841 is constitutional.") (collecting cases).  With no guidance to the contrary, the court fails to find that the sentencing structure of 21 U.S.C. § 841 is unconstitutional.

Instead, the appropriate forum for defendant's policy argument should be the defendant's sentencing hearing whereby the court, under an advisory, post-<u>Booker</u> sentencing regime, may determine whether it is appropriate to deviate from the Guidelines as a matter of policy.

### D. The Court's Jury Instruction Regarding "Knowledge" Was Appropriate and Complies with <u>United States v. Brower</u>

Counsel for defendant takes issue with court's jury instruction which stated the applicable law for each count:

> In order to establish the offense proscribed by 21 U.S.C. § 841(a)(1), the Government must prove each of the following elements beyond a reasonable doubt:

> First: That the defendant did distribute 50 grams [for Count One and Three or 5 grams for Count Two] or more of pure methamphetamine, as alleged . . . in the indictment.

> Second: That the defendant did so knowingly and intentionally.

> <u>Regarding the second element, it is not necessary that the United States prove that the defendant knew the exact nature of the relevant controlled substance, so long as the proof shows beyond a reasonable doubt that he knew that the item was a controlled substance</u>

*  *  *

> The term "knowingly" means that one is consciously
> aware of the nature of his conduct and/or the
> existence of certain attendant circumstances.

<u>See</u> Court's Exhibit 4 (emphasis added).  Admitting that the

underlined portion is a correct statement of law consistent with

<u>United States v. Brower</u>, 336 F.3d 274 (4th Cir. 2003),[2] counsel

for defendant alleges that the <u>order</u> of the court's instructions

may have misled the jury into perceiving that Wilkerson could

have been found guilty of each count based upon his admitted

distribution of marijuana.

"The test of the adequacy of jury instructions is whether

the jury charge, construed as a whole, adequately states the

controlling legal principle without misleading or confusing the

jury."  <u>Chaudhry v. Gallerizzo</u>, 174 F.3d 394, 408 (4th Cir.

1999).  Moreover, the jury is presumed to have followed the

court's instruction, <u>id.</u> at 394, and "[a] judgment will be

reversed for error in jury instructions 'only if the error is

determined to have been prejudicial, based on a review of the

---

[2] This court's instruction almost replicated the jury instruction
in <u>Brower</u>:

> Although the Government must prove the Defendant knew
> he distributed a controlled substance, the Government
> does not have to prove the Defendant knew the actual
> nature of the substance he distributed. It is enough
> that the Government proves the Defendant knew he
> distributed some kind of controlled substance.

<u>Id.</u> at 275–76.

record as a whole.'" Abraham v. County of Greenville, 237 F.3d

386, 393 (4th Cir. 2001) (quoting Wellington v. Daniels, 717

F.2d 932, 938 (4th Cir. 1983)).

"A jury charge must be construed in light of the whole

record," Abraham, 237 F.3d at 393, and is reviewed for an abuse

of discretion.  See Chaudhry, 174 F.3d at 408.[3]

Reviewing the court's instructions in their totality,

Abraham, 237 F.3d at 393, the court concludes that jury did not

infer that the first element – "[Wilkerson] did distribute 50

grams or more of pure methamphetamine" – could be established

through the sale of marijuana.  Moreover, counsel for Wilkerson

admits that the court correctly identified the elements that the

government was required to establish under Brower.  Therefore,

the court concludes that the court's jury instructions "provided

an accurate overview of the pertinent legal principles," Hardin

v. Ski Venture, Inc., 50 F.3d 1291, 1294 (4th Cir. 1995), and

the court need not digress into whether Wilkerson was "seriously

prejudiced" by the jury instruction.  Id. at 1296; see also Knox

Energy, LLC v. Gasco Drilling, Inc., 258 F. Supp. 3d 709, 736

---

[3] Furthermore, while defendant asserts that he did object,
counsel's objection was levied toward the substance of the
court's jury instruction, not its order.  See Mar. 29, 2018, Tr.
at pp. 9-11, 27.  Therefore, the applicable standard of review
is for plain error.  See United States v. Stitt, 250 F.3d 878,
883 (4th Cir. 2001); see also United States v. Olano, 507 U.S.
725, 732–35 (1993) (discussing four prongs of plain error
analysis).

(W.D. Va. 2017), aff'd, No. 17-1878, 2018 WL 2944408 (4th Cir. June 11, 2018) ("Even if a jury instruction is found to be flawed, the error must seriously prejudice the plaintiff's case before a defense verdict can be overturned.").

## E. Law Enforcement Officers' Recognition of Defendant's Voice Does Not Constitute 404(b) Evidence.

For the first time, the defendant argues that Corporal Hackney's and Detective Middleton's recognition of Wilkerson's voice constitutes Rule 404(b) evidence, for which the government failed to give notice. Rule 404(b) of the Federal Rules of Evidence prohibits evidence of other crimes or bad acts to show bad character and propensity to violate the law. Even though the officers' recognition of Wilkerson's voice arose through conducting a search warrant (which could be considered Rule 404(b) evidence), the officers' testimony as to their familiarity with defendant's voice does not constitute evidence of a crime or bad act. See Mar. 27, 2018, Tr. 36:18-37:2 (Corporal Hackney); Mar. 28, 2018, Tr. 136:9-22 (Detective Middleton). Therefore, no notice was required by the government, and certainly no plain error exists.

## F. The Government's Cross-Examination Was Proper

Defendant takes issue with the government's cross-examination regarding motor vehicles related to the defendant. Defendant alleges that the government's cross-examination was

improper.[4] Rule 611 of the Federal Rules of Evidence states that "Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility. The court may allow inquiry into additional matters as if on direct examination." "[A] defendant can only cross-examine a prosecution witness if the information sought to be elicited is relevant." United States v. Zayyad, 741 F.3d 452, 459 (4th Cir. 2014) (quoting United States v. Maxwell, 579 F.3d 1282, 1296 (11th Cir. 2009)). A matter is relevant if there is "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

In total, Wilkerson claimed to have sold the CI 1.25 pounds of marijuana (5 quarter pounds) in exchange for $4,475, with a sum uncertain left unpaid. See Mar. 29, 2016, Tr. 29:11-23, 36:18-24, 37:1-2, 39:16-40:3.

---

[4] Defense counsel also argues that the government barred itself from questioning Wilkerson about these motor vehicles because they were searched during the execution of the May 2016 search warrant, and the government indicated that it would not use "anything from the May search warrants at the trial." See ECF No. 202, citing Aug. 8, 2017, Tr. 5:8-10. Defendant takes this statement out of context. This statement was not made to disclose the government from using information gleaned during the search warrant. Instead, the government was communicating to the court that defendant's motion to suppress Wilkerson's custodial statements during the May search, (ECF No. 51), was moot, because the government did not intend to introduce evidence of the May 2016 search at trial.

During cross-examination, the government delved into the profitability of Wilkerson's drug transactions based upon his testimony:

Q: So, we're still talking about over $1,000.00 for a quarter pound of marijuana?

A: Yes, ma'am. We're talking about a – it's hydroponic marijuana.

Q: It was really good marijuana?

A: Yea, with high levels of THC.

Id. at 49:3-8. Later, Wilkerson confirmed that had driven a Ford Expedition and Mercedes to the three drug sales at issue. See id. at 53:19-54:18. The government then asked the defendant about his ownership of two other vehicles:

Q: Now, speaking of cars, you also have a BMW and a Jaguar: is that correct?

A: No, ma'am . . . [Defense counsel's objection on the basis of relevance overruled] . . . No. No, ma'am. My mother owns a BMW and a Jaguar.

Q: Your mother owns a BMW and the Jaguar, but the Ford Expedition and the Mercedes were yours?

A: Excuse me?

Q: The Ford Expedition and the silver Mercedes were yours?

A: No, ma'am. My mother owns those vehicles, also.

Q: Your mother owns a Ford Expedition, a Mercedes, a BMW and a Jaguar?

A: Absolutely. And that's what – the State of West Virginia will show those vehicles are registered to my mother.

Q: I'm sure it will [stricken by the court as
        argumentative].

Id. at 54:20-55:15.  The court finds that this line of
questioning was clearly within the bounds of cross-examination
because it challenges the credibility of defendant's narrative.
When Wilkerson took the stand, his credibility immediately was
at issue.  See United States v. Zandi, 769 F.2d 229, 236 (4th
Cir.1985) ("[B]y taking the stand, [defendant's] credibility
became subject to attack on cross-examination.  Matters
affecting the credibility of the witness are always open to
cross-examination.") (internal quotation marks omitted).  The
government's cross-examination, which questioned the financial
feasibility of Wilkerson's drug transactions, was relevant and
within the bounds of Rule 611.

        Wilkerson argues that the government already knew that the
BMW and Jaguar were not owned by Wilkerson because "law
enforcement attempted to have these vehicles forfeited in
Kanawha County, but Defendant's mother, the registered owner of
the vehicles, prevailed in that proceeding."  ECF No. 202 at
p.16.  The court does not find that a ruling in a state court
forfeiture proceeding discloses the government from this line of
questioning because ownership is not equivalent to the
defendant's potential control or use of these vehicles.  Indeed,

the defendant actually drove the Ford Expedition and Mercedes to the drug transactions at issue.

### G. The Government's Closing Argument Was Proper

Defendant argues that the government's closing argument referred to facts not in evidence.  Improper remarks made during the government's closing argument constitute violate a defendant's due process rights if the remarks were both 1) improper, and 2) prejudicially affected the defendant's substantial rights, depriving him of a fair trial.  United States v. Wilson, 135 F.3d 291, 297 (4th Cir. 1998).  Therefore, even if the prosecution's statements were improper, the defendant must demonstrate:

> first, whether the comments misled the jury and
> prejudiced the appellant; second, were they isolated
> or extensive; third, absent the remarks, what was the
> weight of the evidence against the accused; and
> fourth, were the prosecutor's remarks deliberate.

United States v. Loayza, 107 F.3d 257, 262 (4th Cir. 1997). Because counsel failed to object, Wilkerson bears the burden of showing plain error.

Defense counsel argues that two statements made by the government improperly characterized Wilkerson's testimony. First, defense counsel claims the government misconstrued Wilkerson's testimony as to the price at which he sold marijuana as "astronomical" and "very high."  During cross-examination, Wilkerson affirmed that he was selling the CI a quarter pound of

marijuana for over $1,000.  Wilkerson, however, went further to explain this more than $1,000 price tag: "it's hydroponic marijuana."  Mar. 29, 2018, Tr. 49:3-8.  In doing so, Wilkerson implicitly admits that he was selling high priced marijuana. The government's statement that Wilkerson was selling "very high" priced marijuana was not improper.

On the other hand, the government's statement that Wilkerson was selling marijuana at an "astronomical" price is more questionable.  The government never offered evidence regarding the price that hydroponic marijuana is sold for on the street.  Nevertheless, the court fails to find that this single word, certainly isolated in nature and which a reasonable jury could have inferred, see Loayza, 107 F.3d at 262, deprived Wilkerson of a fair trial.  Instead, the great weight of the evidence presented to the jury at trial demonstrated defendant's guilt.  Id.

Second, defense counsel argues the government put words into the defendant's mouth about his selling "blocks."  Prior to one of the controlled buys, a conversation between the CI and Wilkerson was recorded.  Wilkerson stated that in future deals "I'm going to start giving you blocks, man."  The CI testified that "blocks" meant a brick, or 36 ounces, of crystal methamphetamine.  See Mar. 28, 2018, Tr. 76:19-77:25.  Despite affirming that it was his voice on the recordings, Wilkerson

alleged that "blocks" referred to marijuana, not

methamphetamine.  See Mar. 29, 2018, Tr. 50:25.  During

rebuttal, Wilkerson testified that he never sold a brick of

marijuana to the CI.  Id. at 55:24-56:2.  In sum, Wilkerson's

testimony was that while he had never sold the CI a brick of

marijuana, he had promised to in the future.

In closing arguments, the government contended that

Wilkerson sold the CI methamphetamine, consistent with the

evidence of the three packages of methamphetamine seized and the

CI's testimony.  The government posed the question to the jury

during closing: "has anyone ever heard of people buying blocks

of marijuana?  Marijuana doesn't get sold in blocks.  Meth gets

sold in blocks."  Id. at 64:11-13.  The government's statements

were supported by the testimony of the CI that when Wilkerson

referenced blocks, he meant crystal methamphetamine.

In Bates v. Lee, the Fourth Circuit declared:

> prosecutors enjoy considerable latitude in presenting
> arguments to a jury because the adversary system
> permits the prosecutor to prosecute with earnestness
> and vigor. Committed advocates do not always present
> antiseptic closing statements, and the jury is
> entrusted within reason to resolve such heated clashes
> of competing views.

308 F.3d 411, 422 (4th Cir. 2002) (citations and internal

quotations omitted).  Here, the testimony of the CI and

Wilkerson as to what "blocks" meant was opposing.  As a result,

the government was proper to argue to the jury that CI's

testimony, and the jury's own knowledge, should be followed.
Id.

Moreover, the evidence presented against Wilkerson was overwhelming. Loayza, 107 F.3d at 262. The government presented testimony from the CI and two officers, introduced evidence of the methamphetamine seized and provided audio recordings of the telephone calls arranging the controlled buys, and audio and video recordings of each controlled buy. The fact that the defendant provided a contradictory narrative does not upset the weight of the evidence in support of the government's case. See Bates, 308 F.3d at 422 (determining that the prosecutor's argument to the jury "did not run afoul of the due process clause" because it was "based upon facts established during trial or aspects of the trial which were readily apparent to the jurors.").

In conclusion, the defendant cannot establish that the government's closing arguments "so prejudiced [Wilkerson's] substantial rights" that a new trial is warranted. See United States v. Lighty, 616 F.3d 321, 359 (4th Cir. 2010).

### H. The Court's Denial of Defendant's Motion to Strike or Supplement the Jury Pool

On the eve of trial, at the parties' second pretrial motions hearing, the court heard arguments from both parties and testimony from Rory L. Perry, II, Clerk of the Southern District

of West Virginia regarding defendant's Motion to Supplement Jury Venire.  ECF No. 165.  The court denied the motion on the record and supplemented its reasoning in an April 3, 2018 Memorandum Opinion and Order.

### I. The Court's Refusal to Appoint a Third Court-Appointed Counsel to Represent Wilkerson Was Justified

Prior to trial, counsel for the defendant, Gerald Titus filed a motion to withdraw as counsel alleging irreconcilable differences between him and Wilkerson, because the defendant no longer wished to speak to him due to differing trial defense strategies.  See ECF No. 137.  This motion came after the defendant's first court-appointed counsel, George Lancaster, was allowed to withdraw by the court because the defendant "advised him he no longer wishe[d] to be represented by undersigned counsel."  ECF No. 21.

After a hearing on Titus' motion to withdraw, the court determined that given the nine prior continuances and withdrawal of defendant's original court-appointed counsel, that the countervailing public interest outweighed the appointment of a third counsel to represent Wilkerson.  ECF No 141 at p.5 (citing United States v. Morsley, 64 F.3d 151, 156 (4th Cir. 1995)). The court offered Wilkerson two options: keep Titus or defend yourself.  See Feb. 21, 2018, Tr. 11:16-21.  He chose the former and doing so did not result in a miscarriage of justice.

## IV.   CONCLUSION

Accordingly, the court **DENIES** the defendant's motion for a new trial pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure.   ECF No. 202.

The Clerk is directed to send a copy of this Order to counsel of record, the United States Marshal for the Southern District of West Virginia and the Probation Office of this Court.

**IT IS SO ORDERED** this 3rd day of August 2018.

ENTER:

David A. Faber
Senior United States District Judge